Byron L. STEVENS, Plaintiff,

v.

R.L. BROWN, Defendant.

Byron L. STEVENS, Plaintiff,

v.

Ronald V. HAYES, Defendant.

Byron L. STEVENS, Plaintiff,

v.

H.W. RICHARDSON, Defendant.

Byron L. STEVENS, Plaintiff,

v.

D.L. SHARPE, Defendant.

Nos. C–C–78–041–M, C–C–78–046–M, C–C–78–049–M and C–C–78–050–M.

United States District Court, W.D. North Carolina, Charlotte Division.

June 2, 1983.

William K. Diehl, Jr., Charlotte, N.C., for plaintiff.

Frank B. Aycock, III, Charlotte, N.C., for defendants.

ORDER AND JUDGMENT

McMILLAN, District Judge.

These cases were tried before a jury on August 24 and 25, 1982. The issues were

submitted to the jury and resulted in a verdict which appears of record, as follows:

1. The defendant Brown was not liable for violation of plaintiff's civil rights, but he was liable for the wrongful taking of the plaintiff's automobile and damages were assessed against him in the amount of $500.00.

2. The defendants Hayes, Richardson and Sharpe all violated plaintiff's civil rights by conspiring or planning together and with each other to have plaintiff arrested and prosecuted and convicted and punished for murder, through use. of false testimony.

3. Damages were assessed against the defendant Hayes in the sum of $2,500.00; against the defendant Richardson in the sum of $2,500.00; and against the defendant Sharpe in the sum of $4,000.00.

Defendants filed various motions addressed to the verdict. The court deferred action on those motions in the hope that the state of the law might be clarified by the forthcoming decision of the Supreme Court in *Briscoe v. LaHue,* —— U.S. ——, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). That decision did not, however, answer the questions presented in these cases.

A hearing has been conducted at which the various post-verdict motions were heard and briefs were received from counsel.

Aside from procedural and evidentiary questions and claims of error with respect to the trial itself, the case presents a serious question of statutory construction:

Are police officers immune from liability for damages under the Civil Rights Acts if they conspire together and procure a murder conviction through the use of false testimony?

## HISTORY OF THE PROCEEDINGS

Byron J. Stevens, a black man now thirty-seven years old, moved from the northeast to Charlotte in 1973 or 1974. In June of 1976 he was living at 325 East Tremont Avenue in Charlotte with a man named Amos Belk. Stevens had no criminal record. During the afternoon of Sunday, June 6, 1976, Belk mowed the lawn and drank beer or wine. Stevens testified that at some time between 8:30 and 9:00 P.M., at Belk's request, Stevens picked up a can which contained gasoline for the lawnmower and which Belk had brought into the house, and started to move it to another place; that Belk struck a match and the gasoline ignited and a fire occurred. Stevens attempted to extinguish the flames on Belk's clothing and got him out of the house. Both were burned, Belk seriously. Belk died about four weeks later.

A few hours after the fire, investigating police officers interrogated Stevens, accusing him of pouring gasoline on Belk and setting him on fire. Stevens denied the accusations.

Stevens was ultimately tried in the Superior Court of Mecklenburg County, North Carolina, for the first degree murder of Amos Belk, and was convicted and is serving a life sentence. He has not been at liberty since June 6, 1976, the day of the events above referred to.

Apparently Stevens has made no incriminating admissions in his murder trial or at any other time.

Stevens at all times denied any wrongful act, and insisted from the first that he did not set fire to nor harm nor murder the deceased.

The evidence, superficially, will support a finding of conspiracy to convict by false testimony.

The witness Richardson testified that he talked with the district attorney, Mr. Davis. He was asked the following question with respect to the actions of the district attorney and the witnesses (R. 55):

Q. "You all got together before trial and decided what you needed to say and not needed to say to get a conviction, didn't you?

A. "We do that in every case."

The witness Sharpe testified that they met with the district attorney and reviewed their testimony and attempted to eliminate inconsistencies so as to present "a united front" to the jury.

The testimony of Stevens, who, according to the evidence had no criminal record whatever, was that he was totally innocent.

The only evidence of Stevens' guilt was the mute dying declaration of the decedent Belk.

The evidence taken in the light most favorable to the plaintiff was thought by me at the time of the trial to be strong enough to permit, though not to require, a finding of conspiracy to convict by perjury.

 Under the law of North Carolina there is no civil liability, on the part of a witness for the prosecution, for damages resulting from false testimony or perjury in a criminal proceedings. *Gillikin v. Springle,* 254 N.C. 240, 118 S.E.2d 611 (1961). There is also no liability for such damages based upon subornation of perjury; that is, paying or otherwise inducing someone to testify falsely in a criminal case. *Id.*

Under federal law, it has been held that a witness for the prosecution in a criminal case may not be held liable under the Civil Rights Act for perjury or giving false testimony for the prosecution in a criminal case. *Briscoe v. LaHue, supra* (Brennan, Marshall, and Blackmun, JJ., dissenting).

The question of liability in the federal courts under 42 U.S.C. §§ 1983, 1985, for money damages for *conspiracy* to convict through false testimony, has not yet been squarely decided. If I were at all satisfied that such a conspiracy had been formed and carried out in this case, I would go ahead and enter judgment for the plaintiff on the verdict.

There is a strong public purpose to encourage free testimony in criminal cases. That purpose attaches especially to police officers, who have to testify frequently in criminal cases, and it for similar reasons must attach to other witnesses because of the necessity that citizens feel free to report to the courts and to testify in trials without fear of reprisals based upon mistake or other valid reasons.

However, there has not been suggested to me, and I am unable to divine, any public purpose based on public health, safety, welfare or morals, or any other grounds, which is served by protecting witnesses from liability in damages caused by a successful *conspiracy,* that is, deliberate advance planning, to procure a conviction by the use of false testimony. The arm of the prosecution is not so weak that it will be paralyzed by making liable in damages those proved to have conspired unlawfully to convict and to corrupt the processes of justice by the deliberate use of false testimony.

I therefore will decide the case on the premise that such liability, if proved, does exist.

The trouble with the theory in this case is that the theory of conspiracy and the carrying out of that conspiracy is not in fact proved on this evidence. The words are there, as outlined above, but the tune is off-key.

I have read the narrative statement of the evidence in petitioner's case on appeal to the Supreme Court of North Carolina, and from it have gotten at last a clear and chronological report of what happened in the trial of petitioner in the Superior Court of Mecklenburg County for murder.

To begin with, the witness who first reported the dying declaration of the decedent, Belk, was not a police officer but a doctor, who received this story from the now deceased Belk a short time after Belk was injured and in the hospital where he was treating Belk for his fatal burns. The declaration itself was formally received by Officer Sharpe the next morning in the hospital; the interview was conducted carefully and recorded on tape. It was presented forthrightly to the jury in the course of the state's presentation. It *is* the case in chief.

There is no evidence that the testimony of any police officer was inconsistent with the physical facts or with the recital given by Belk to the doctor and to Officer Sharpe.

There was no "sandbagging" of Stevens in the prosecution's rebuttal testimony as to Stevens' statements made to the officers on the night of the event. The statement attributed to Stevens in the state's rebuttal

was significant only in that it contradicted what Stevens had just said in his sworn testimony in his defense—contradictory because although taken at face value it would demonstrate his innocence, it was in sharp contrast with the facts he had related in his own testimony a short time earlier in the trial.

One concludes upon reading what happened at the original trial that although there may be theoretical evidence of a conspiracy, there is no evidence from which it should be concluded that false testimony was in fact given nor that any fundamental unfairness was created by the manner and order of presentation of the evidence.

Therefore, although as indicated above, I fully concur in the plaintiff's theory, I conclude that plaintiff's theory was not in fact proved and that the verdict for damages against Hayes, Richardson and Sharpe should be set aside and judgment entered for those defendants.

The motion to set aside the verdict against the defendant Brown is denied, and judgment will be entered on that verdict.

The argument of defendants that plaintiff's conviction of murder estopped him from maintaining this action is not sustained.

The contentions of the defendants that the court committed reversible error in the manner in which the case was tried and in the refusal to allow defense counsel unfair cross-examination of plaintiff are denied.

IT IS THEREFORE ORDERED:

1. The verdict against the defendants Hayes, Richardson and Sharpe based upon conspiracy is hereby set aside.

2. The motion of the defendant Brown to set aside the $500 verdict against him for conversion of plaintiff's automobile is denied.

3. Plaintiff shall recover nothing of the defendants Hayes, Richardson and Sharpe for damages for conspiracy to convict by use of false testimony.

4. Plaintiff shall recover $500 of the defendant Brown, with interest from June 6, 1976, until paid.

5. That the plaintiff is entitled to recover costs and attorneys' fees of the defendant Brown.

6. The parties shall confer and, within ten days, submit an agreement, if they can, with respect to costs and attorneys' fees.