Eric DAHLBERG, Plaintiff-Appellant,

v.

Carl F. BECKER; Govern, McDowell & Becker; Ellen M. Dahlberg; and Harvey E. Stoddard, Jr., Defendants,

Carl F. Becker; Govern, McDowell & Becker; and Ellen M. Dahlberg, Defendants-Appellees.

No. 1374, Docket 84–7219.

United States Court of Appeals, Second Circuit.

Argued June 20, 1984.

Decided Nov. 9, 1984.

86

Herbert Jordan, Roxbury, N.Y. (Randlett Walster, Rural Legal Rights Foundation, Inc., Roxbury, N.Y., of counsel), for plaintiff-appellant.

John E. Hunt, Utica, N.Y., (Andrea Lynch, Kernan and Kernan, P.C., Utica, N.Y., of counsel), for defendants-appellees Carl F. Becker and Govern, McDowell and Becker.

Before MESKILL, CARDAMONE and ROSENN,* Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal from an order, dismissing plaintiff's complaint for failure to state a claim, made by the United States District Court for the Northern District of New York (Miner, J.), 581 F.Supp. 855, presents

* Honorable Max Rosenn, United States Circuit Judge for the Third Circuit, sitting by designation.

a question of first impression that involves the well-known litany of Title 42 U.S.C. § 1983, which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Despite our familiarity with the refrain, the scope and meaning of the words have not proved easy to define. This case provides yet another opportunity to explore the contours of § 1983. In venturing into the unplumbed depths of "state action," a sense of the strong yet uncertain cross-currents in this area of the law leads us to hug the known legal shore as closely as possible.

## I

The facts in this case stem from a dispute between plaintiff, Eric Dahlberg, and defendant, Ellen Dahlberg, his former wife. A matrimonial proceeding between them ended in a default divorce and a stipulation of settlement which was executed by the parties and later incorporated in a June 1982 decree. When the plaintiff failed to make the payments required by the stipulation, his wife's attorneys—co-defendants in the present litigation—prepared an order to show cause why he should not be held in contempt. The order stated that plaintiff owed defendant $1,785 for maintenance and $800 in costs and fees to her attorneys and that he had neglected to execute certain documents, including a promissory note for $8,000 and security instruments covering certain machinery.

The show cause order, presented *ex parte* on November 23, 1982 to an Acting New York State Supreme Court Justice for Delaware County, was made returnable in December at Special Term. When neither plaintiff nor his attorney appeared on the return date, the Special Term Justice found Dahlberg guilty of contempt and signed an order which provided that he could purge himself of contempt by paying the maintenance arrearage and signing the requisite promissory notes and financing statements. The order also stated that further noncompliance on Dahlberg's part would cause an order of commitment to issue. When Dahlberg again failed to respond, Special Term signed a commitment order that resulted in Dahlberg's arrest on June 7, 1982 by the Sheriff of Schoharie County. After plaintiff was transported to the county jail, he was advised that to obtain his release he would have to pay $300 in maintenance, $2500 in attorneys' fees, plus the sheriff's fees. Upon reading the order of commitment, the Schoharie County Court Judge who conducted the arraignment told Dahlberg that he had no alternative but to hold him without bail. Later that same afternoon Dahlberg's friends provided him with the necessary funds, promissory notes and financing statements. Despite plaintiff's willingness to meet these obligations, the County Court Judge refused to order plaintiff's release absent authorization from either a State Supreme Court Justice or Ellen Dahlberg's attorneys. Plaintiff was therefore confined overnight in the Schoharie County jail. The next morning, June 8, defendant's attorneys telephoned the County Court Judge and authorized plaintiff's release, contingent on his signing the requisite documents and paying the maintenance and attorneys' fees. Shortly before noon Dahlberg was again before the county court where he signed the documents, paid the fees and obtained an order releasing him from jail.

Based on these events, plaintiff commenced the present action in district court pursuant to 42 U.S.C. § 1983. In his complaint he alleges that Ellen Dahlberg and her attorneys acted under color of state law to cause his unlawful arrest and imprisonment violating his Fourteenth Amendment rights. Specifically, Dahlberg asserts that defendants intentionally and/or negligently: (a) prepared a false

affidavit and submitted it to the New York State Supreme Court in support of the show cause order as a basis for obtaining a promissory note and financing statements to which, he alleges, defendants were not entitled; (b) omitted from the order to show cause the notice and warning required by section 756 of the New York Judiciary Law;[1] (c) violated section 761 of the New York Judiciary Law[2] by serving an order to show cause for contempt upon an attorney whose authority had expired; and (d) failed to include with the commitment order either the actual promissory note and financing statements or a satisfactory description of those documents so that the County Court Judge could assess plaintiff's compliance and thereby avoid his needless incarceration. As a result, Dahlberg claims to have suffered damages from lost work, work improperly performed by unsupervised employees, injury to business reputation, as well as extreme shock, outrage, degradation and humiliation.

Ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), Judge Miner concluded that Dahlberg's complaint failed to state a claim upon which relief can be granted. He found it clear that neither Ellen Dahlberg nor her attorneys acted under color of state law. Plaintiff has not appealed the dismissal of his suit against Ellen Dahlberg. In his appeal of the dismissal of his suit against defendant attorneys, plaintiff renews his contention that through their joint participation with a state official as well as their independent exercise of power allegedly ceded to them by a state official they acted under color of

state law. Although we affirm the result reached by the district court jduge, we do so for somewhat different reasons.

## II

▮ Since the judgment below was premised on Fed.R.Civ.P. 12(b)(6), we note at the outset that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Moreover, in passing on a motion to dismiss, the allegations of the complaint must be construed in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Fine v. City of New York*, 529 F.2d 70, 75 (2d Cir.1975). Even accepting Dahlberg's allegations as true, his complaint does not state a cause of action under 42 U.S.C. § 1983.

We start with the words of the Fourteenth Amendment that no State shall deprive any person of life, liberty or property without due process of law. By enacting 42 U.S.C. § 1983 Congress provided a remedy for a claimed violation of this constitutional guarantee. The statute permits suit upon deprivation under color of any state statute, ordinance, regulation, custom or usage of one's life, liberty or property without due process of law. Section 1983 protects an individual's rights against governmental action, as distinct from private action, whether the government is state or

---

1. Section 756 states, in pertinent part:

    An application to punish for a contempt punishable civilly may be commenced by notice of motion returnable before the court or judge authorized to punish for the offense, or by an order of such court or judge requiring the accused to show cause before it, or him, at a time and place therein specified, why the accused should not be punished for the alleged offense. ... The application shall contain on its face a notice that the purpose of the hearing is to punish the accused for a contempt of court, and that such punishment may consist of fine or imprisonment, or both, according to law together with the following

legend printed or type written in a size equal to at least eight point bold type:
    WARNING:
    YOUR FAILURE TO APPEAR
    IN COURT MAY RESULT IN
    YOUR IMMEDIATE ARREST
    AND IMPRISONMENT FOR
    CONTEMPT OF COURT
N.Y.Jud. Law § 756 (McKinney Supp.1983).

2. "An application to punish for contempt in a civil contempt proceeding shall be served upon the accused, unless service upon the attorney for the accused be ordered by the court or judge." N.Y.Jud. Law § 761 (McKinney Supp. 1983).

municipal. As a corollary, individuals are also protected against acts of private parties who act in concert with government officials.

■ In order to allege a good cause of action, plaintiff must charge first that the conduct complained of has deprived him of a constitutionally-protected right; and second, that the conduct allegedly causing the deprivation was fairly attributable to the State. The Supreme Court has set forth a two-part analytical approach to this question of "fair attribution." Plaintiff must show that the allegedly wrongful action occurred as a result of the exercise of a state-created right or privilege, or by a state-imposed rule of conduct. Plaintiff must also show that the party charged with the deprivation is a person who is a state official or someone whose conduct is otherwise chargeable to the State. In other words, to establish deprivation of a federally-protected right there must be both "state action" and a "state actor."[3]

Since both parties to this appeal rely on *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), to support their opposing conclusions, we undertake to analyze it in some depth. The facts are relatively simple. A truckstop operator in Virginia indebted to his supplier was sued in state court on the debt. Simultaneously, the supplier sought prejudgment attachment of the debtor's property pursuant to Virginia law. Acting upon the supplier's *ex parte* petition, a state court clerk issued a writ of attachment that was executed by the county sheriff. As a result, the debtor's property was sequestered for 34 days, at which time the attachment was dismissed due to the supplier's failure to establish a statutory basis for the issuance of the writ. The debtor thereupon sued under § 1983 alleging that the supplier, a private party, had acted jointly with the State to deprive him of his property with-

out due process of law. *Id.* at 924–25, 102 S.Ct. at 2747–48.

*Lugar* proceeded to outline a standard for determining the presence of state action. The Court held that the conduct causing the deprivation of a federal right must be fairly attributable to the State and, accordingly, proposed a two-pronged approach to determining "fair attribution."

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible .... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.* at 937, 102 S.Ct. at 2754. *Lugar* then examined the two counts of plaintiff's complaint in light of its test. Count one asserted that Virginia's prejudgment attachment statute was constitutionally defective. Count two simply alleged plaintiff's deprivation came about by defendant's unlawful acts. The Court considered count two first and held that it failed to satisfy the first prong because it did not charge conduct that could fairly be attributed to any state governmental decision or rule. Rather, the Court specifically asserted that defendants invoked the state statute in abuse of and in direct contravention to relevant state policy. *Id.* at 940, 102 S.Ct. at 2755. Thus, the Court held that count two failed to assert a valid § 1983 claim because it did not satisfy the state action or first prong of the fair attribution test.

The Court then examined count one and found that it met the first prong of the fair attribution standard. As the Court noted: "While private misuse of a state statute [*i.e.*, count two] does not describe conduct

---

**3.** We recognize that the concept encompassed by "state action" and "state actor" overlap. They collapse into each other when the claim of a constitutional deprivation is directed against a public official. The two requirements diverge only when the claim is directed against a private party.

that can be attributed to the State, the procedural scheme created by the statute [*i.e.*, count one] obviously is the product of state action." *Id.* at 941, 102 S.Ct. at 2756. It next applied the second prong of the test to the allegations in count one. It observed that a private party's "joint participation" with state officials in the seizure of disputed property will suffice to characterize that party as a state actor. *Id.* at 941, 102 S.Ct. at 2756. *Lugar* held that defendants were such joint participants and, therefore, state actors because they "invok[ed] the aid of state officials to take advantage of state-created attachment procedures." *Id.* at 942, 102 S.Ct. at 2756.

## III

Eric Dahlberg likens his case to *Lugar* and urges that the Court's holding there supports his § 1983 claim. The deprivation of Dahlberg's federally-protected right to liberty by his overnight imprisonment is not questioned. Accordingly, we turn to the two part "fair attribution" test to determine whether his rights were deprived under color of state law. As the ensuing analysis demonstrates, neither prong of the "fair attribution" test has been satisfied.

As previously stated, the state is responsible[4] for violation of plaintiff's constitutional rights whenever that deprivation is *caused* by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. 457 U.S. at 937, 102 S.Ct. at 2754. The Supreme Court read count one of Lugar's complaint to allege that Virginia's prejudgment attachment statute was procedurally defective under the Fourteenth Amendment. *Id.* at 941, 102 S.Ct. at 2756. The deprivation of Dahlberg's federally-protected rights is not "caused" by the exercise of some right created by the State in the same sense as was Lugar's. A private party's misuse of New York's Judiciary Law that causes plaintiff to be imprisoned overnight

is not fairly attributable to New York State. In *Lugar* the state statute was itself constitutionally defective. Since a State is charged with the responsibility of assuring that its laws are constitutional, a constitutionally defective statute is plainly a product of state action. As such, it was deemed in *Lugar* to have "caused" or "permitted" defendant to seize plaintiff's property.

Plaintiff has not here alleged that New York's procedure for notice and adjudication of contempt is constitutionally defective. Thus, the present case does not fall within the *Lugar* rationale for state action. In fact, the instant case is more closely related to count two of Lugar's complaint that asserted that the deprivation of property resulted from private party defendants' " 'malicious, wanton, willful, opressive [sic], [and] unlawful acts.' " *Id.* at 940, 102 S.Ct. at 2756. This allegation did not ascribe conduct to any state governmental decision or action. Instead, it implicitly legitimized the state statute and complained only that the private party defendants had run afoul of the statute. In the words of the Court: "That respondents invoked the statute without the grounds to do so could in no way be attributed to a state rule or a state decision. . . . [P]rivate misuse of a state statute does not describe conduct that can be attributed to the State. . . ." *Id.* at 940–41, 102 S.Ct. at 2756. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (abuse of authority doctrine).

■ Private misuse of a state statute is precisely what plaintiff has alleged here. Dahlberg's complaint accuses his ex-wife's lawyers of intentionally or negligently violating the notice provisions of New York Judiciary Law § 756 and thereby causing his subsequent arrest and imprisonment. It is one thing to hold a State accountable for the unconstitutional acts of its legislature, but quite another to charge that State

---

**4.** The use of the word "responsibility" does not imply that actions taken pursuant to state authority will impose legal liability upon the State, but the term means, as Webster's first definition

states, only that the deprivation of plaintiff's federally-protected rights is "caused" by the exercise of some right or privilege created by the State.

with responsibility where private parties abuse an otherwise valid state law. In the latter case, the State does not sanction such abuse, nor can it prevent it any more than it can stop a private party from committing a crime or tort. Thus, the deprivation of Dahlberg's rights was not caused by the exercise of some right or privilege created by the State.

Nor can the conduct complained of subject defendants to Section 1983 liability for their actions based upon a rule of conduct imposed by New York. *See Bell v. Maryland,* 378 U.S. 226, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964) (custom alone is insufficient to turn private conduct into state action). As the Supreme Court held in *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), the decision to discriminate must be ascribed to a governmental decision, so a private club's racially restrictive policies do not constitute state action subjecting the club to constitutional restraint. Thus, since defendants' actions were not encouraged by any rule of New York—regardless of whether they were intentional or malicious—they may not be viewed as caused by a rule of conduct imposed by the State or a person for whom the State is responsible. Therefore, they are not attributable to the State.

Plaintiff challenges this conclusion by asserting that there are other ways of establishing state responsibility. Specifically citing numerous cases including *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), and *Howerton v. Gabica,* 708 F.2d 380 (9th Cir.1983), he attempts to characterize his situation as indistinguishable from them. We agree that state responsibility, the first prong of the fair attribution test, does not inevitably turn on the presence or absence of an unconstitutional state law. *Lugar* makes this clear. Nonetheless, we reject Dahlberg's contention that this case satisfies the state responsibility requirement in some other form.

*Dennis v. Sparks* is quite different from the case at bar. There the "action under color of state law" requirement of § 1983

was met where plaintiff's complaint alleged a conspiracy between the private party defendants and a state official. 449 U.S. at 28, 101 S.Ct. at 186. *Dennis* never discussed Fourteenth Amendment state action or fair attribution of state responsibility. In fact, it was decided nearly two years prior to *Lugar,* which Dahlberg concedes controls. Even assuming that the Court in *Dennis* implicitly found state action and state responsibility, such a finding does not mandate a similar result here. The *Lugar* test for state responsibility is satisfied where the deprivation of plaintiff's rights is caused "by a rule of conduct imposed by the State or by a person for whom the State is responsible." 457 U.S. at 937, 102 S.Ct. at 2754. In *Dennis,* the judge who allegedly accepted a bribe and conspired with private parties was obviously a "person for whom the State is responsible." This is also true with respect to the state judges involved in the Dahlberg contempt proceedings. The difference is the presence in *Dennis* and the absence here of an alleged bribe and conspiracy, before such intentional misconduct can be considered a "rule of conduct." Where a state judge's single, isolated error in signing a defective order was due to oversight or negligence, such nonfeasance may hardly be characterized as a rule. A series or pattern of similar negligent acts might arguably establish a rule of conduct for which the State would be responsible. But Dahlberg has not alleged a pattern of behavior, and we do not assume that a state court judge in this or any other case makes a practice of signing defective orders. Moreover, plaintiffs in § 1983 cases need not allege a pattern of behavior in cases like *Dennis* where the state official acts intentionally rather than negligently. The reason is plain. Given an actor's presumed control over his intended actions, one intentional act can signify the presence of a "rule of conduct," even though in its infancy. Thus, there is good reason for an actor to be held responsible for his intentional behavior, as opposed to his mere inadvertence. And, responsibility is of course a touchstone of fair attribution.

A more difficult problem is presented by the Ninth Circuit's decision in *Howerton v. Gabica, supra,* 708 F.2d 380. There, defendant landlords undertook to evict plaintiff tenants from a rented trailerhouse. In the process defendants prepared a three-day eviction notice that was allegedly defective under state law. They subsequently sought the aid of local police who, together with defendants, evicted the plaintiffs, despite plaintiffs' assertion to the police that the eviction notice unlawfully failed to state the amount of rent due and permit payment of that amount as an alternative to vacating. Plaintiffs also contended that the eviction did not comply with the state's unlawful detainer statute that requires a court order prior to eviction.

The Ninth Circuit ruled that plaintiffs had stated a cause of action against the landlords under § 1983. In particular, it held that the action taken by the landlords was "under color of state law" since it involved significant state involvement. 708 F.2d at 382. Taking note of *Lugar,* the *Howerton* court determined that where "police involvement becomes increasingly important, repossession by private individuals assumes the character of state action." *Id.* at 383. Consequently where private individuals invoke the authority of state officials, such as the police, to put the weight of the State behind their decision to evict, they fall within the "abuse of authority" doctrine. *Id.* at 384 n.9 (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. at 940, 102 S.Ct. at 2756). *See Monroe v. Pape, supra.*

While the circumstances in *Howerton* and the instant case are similar, we observe that although the Howertons called the police officer's attention to the defects in the notice, the police proceeded to enforce the eviction anyway, even to the extent of one officer visiting the Howertons' residence to tell them the defendant's eviction procedures were proper and that they should quit the premises. *Id.* at 381. That is quite unlike the conduct of a judge who unknowingly signs a defective order that has been prepared and submitted to him by an attorney. Hence, regardless of their similarities, we perceive factual distinctions in the circumstances of the two cases. Again, the question of state involvement is always a factual inquiry and, "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961).

## IV

Despite the conclusion that here there is no state action, we think it necessary in light of the alluded to uncertain cross-currents that envelope state action to discuss our reasons for also concluding that defendants are not state actors. Bearing in mind that it requires both state action and a state actor for plaintiff to state a viable cause of action under § 1983, a failure sufficient to allege either defeats plaintiff's cause. While Ellen Dahlberg's lawyers are not state officials, the question nonetheless remains whether under any one of several theories they may still be considered state actors. Aside from the field of prejudgment attachment, several theories have evolved that when properly alleged suffice to tie a private person so closely to governmental actions that a court will hold the private actor's conduct subject to suit for violating another's constitutional rights. Thus, a private party may be held a state actor when the complained of conduct results from a state agent's encouragement or command, the state and private actor jointly participate in depriving plaintiff of his rights, the granting of benefits to a private actor by the state inseparably links them together, or the private actor undertakes to perform activities ordinarily exclusively engaged in by government. As the ensuing discussion demonstrates none are applicable to the claims before us.

First, nothing before us suggests that the state judicial officers commanded or encouraged defendants in their decision to invoke state process against plaintiff. Second, the joint participation theory—adopted

as the rationale in *Lugar*—does not fit this case when it is compared to those cases finding state action on that theory. For example, the government agent and the thugs laying in wait for the victims in *United States v. Price*, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1965), carried out a deliberate, previously agreed upon plan. In *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the state agent's joint participation with Kress employees was found to constitute a conspiracy or meeting of the minds.

The complaint in this case simply alleges that Ellen Dahlberg and her attorneys acted "in concert with state and county officials" to imprison plaintiff. No claim is made—and on the facts in the record none could be—that the different state judges actually entered into a conspiracy or had a meeting of the minds with the attorney defendants as in *Price* and *Adickes* to deprive plaintiff of his liberty. See *Dennis v. Sparks, supra,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185. Further, the mere invocation by defendants of New York's legal procedures does not constitute joint participation so as to satisfy the statutory requirement under § 1983 that there be a state actor. *Lugar* at 939 n.21, 102 S.Ct. at 2755 n.21. While entanglement by the private actor with the State may lead to a conclusion that there is a conspiracy or meeting of the minds between private parties and state officials to engage in conduct to deprive a plaintiff of constitutional rights, the action of the state court judges and the sheriff[5] in this case do not establish any meeting of the minds or intent to conspire with defendants to imprison plaintiff.

Third, there is no basis for finding an inseparable linking or symbiotic relationship arising from any benefits granted by the state to these defendants as in *Burton v. Wilmington Parking Authority, supra,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45. Finally, the exclusivity doctrine has no application here. That doctrine applies where the private party undertakes to perform a function exclusively performed by government, for example, elections, see *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), or running a company-owned town, see *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946). More traditional business activities, like the operation of a public utility, see *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), are not so exclusive. Thus, in *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), the use of state law patterned on the Uniform Commercial Code as a method of dispute resolution between a debtor and creditor was private activity. In *Flagg Brothers* the defendant warehouseman who had a lien on plaintiff's goods in his possession arising from unpaid storage charges sold plaintiff's property. The Supreme Court held it unnecessary to examine whether the law itself or the actions of the warehouseman violated due process because defendant's actions were entirely private. Similarly, the parties' matrimonial dispute in New York involving unpaid alimony and attorneys' fees are not matters exclusively relegated to the State. On the contrary, this kind of dispute is ordinarily resolved by institution of an action between private parties. Therefore, the exclusivity theory does not transform defendants into state actors. Since none of these theories provides a ground for holding defendants to be state actors, we conclude that they are not.

## V

In concluding that plaintiff failed to state a cause of action under 42 U.S.C. § 1983 because there was no demonstration either of state action or a state actor, we do not mean to suggest that plaintiff is without a remedy. The incidents alleged may well support a tort action in state court. We simply conclude that the events recounted here do not provide a basis for a federal claim.

---

5. Sheriff Stoddard is no longer a party to this action since the cause of action against him, pursuant to Fed.R.Civ.P. 41(a), was dismissed by stipulation and order filed February 2, 1984.