**Bruce TAYLOR, Plaintiff,**

v.

**Jon HANSEN, Individually, Carl Van Wagenen, Individually, the County of Ulster, Defendants.**

**No. 85–CV–1643.**

United States District Court, N.D. New York.

Feb. 27, 1990.

Andrea Moran, Kingston, N.Y., for Bruce Taylor.

Horigan Horigan Pennock & Lombardo, Amsterdam, N.Y., for County of Ulster, Thomas V. Blaber, of counsel.

Robert Abrams, Atty. Gen. of State of N.Y., Albany, N.Y., for Jon Hansen and Carl Van Wagenen; Paul D. Silver, Asst. Atty. Gen., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### Introduction

The plaintiff, Bruce Taylor, brought suit pursuant to 42 U.S.C. § 1983,[1] against the County of Ulster, New York; the Ulster County District Attorney's Office; the New York State Police; Francis Vogt, the county district attorney; two assistant district attorneys; and Jon Hansen and Carl Van Wagenen, who are members of the New York State Police. Among other things, the plaintiff alleges that the defendants violated his right to due process of law when they conspired to have defendants Hansen and Van Wagenen present perjured testimony and to withhold exculpatory evidence at plaintiff's trial on charges of criminal sale of a controlled substance in the third degree. N.Y. Penal Law § 220.39. Plaintiff alleges that his felony conviction was obtained as a result of this perjured testimony and the withholding of evidence.

### Background

Plaintiff's claims arise out of his arrest for the sale of drugs at P & G's Bar in New Paltz, New York, on the evening of March 15, 1974. Defendant Hansen testified at trial that on that evening, acting as an undercover officer, he went to P & G's Bar to attempt to arrange a drug sale. Hansen stated that he offered to purchase heroin from Mary Lou Lynch, who then walked four to six feet away from Hansen and spoke to the plaintiff. According to Hansen, Lynch then returned and asked for $25.00, which Hansen gave to her.

---

1. Plaintiff also alleged in his original complaint that the defendants violated 42 U.S.C. § 1985, which prohibits conspiracies to deprive members of racial or class-based minorities of constitutional rights. This allegation was not contained in plaintiff's amended or supplemental complaints, and is not considered by the court.

Hansen stated that "[s]he walked back over to Bruce Taylor and handed him the money and he handed her something." Hansen stated he had a clear view of this transaction. Hansen testified that Lynch returned with a glassine envelope. The contents of this envelope, upon laboratory analysis, was heroin.

Hansen initially testified that he was alone in the bar on that evening, but later stated that he was accompanied by Peter Lozito, whom he described as a voluntary police informant. Defendant Van Wagenen, who was not present at the bar that evening, also testified that Lozito was a voluntary police informant. Lozito's identity was not disclosed to the defense before trial, and his participation in the drug transaction first became known during Hansen and Van Wagenen's testimony at trial.

Hansen's testimony regarding the drug transaction was contradicted by the testimony of plaintiff and Lynch, who was a co-defendant at trial. Lynch testified that she obtained the heroin for Hansen, but that the plaintiff did not participate in the sale. Lynch stated that she obtained the drugs from another woman in a bathroom at the bar, through an arrangement with a drug dealer known as "Spanish Joe" Martinez. Lynch also testified that Lozito was with Hansen in the bar. Plaintiff testified that, although he was present in the bar on March 15, 1974, and spoke to Martinez, he barely knew Lynch and did not sell drugs to or through her that evening.

Plaintiff was convicted and sentenced to a prison term of six years to life. Plaintiff maintained his innocence, however, and prevailed upon the United States Attorney's Office in the Southern District of New York to conduct a grand jury investigation into the circumstances surrounding his conviction. Testimony was taken before the grand jury in 1978, including testimony from Lozito, the police informant. Lozito testified that while he was incarcerated in Ulster County Jail for drug sale and weapons possession charges in 1974, he was visited "four or five times" by a Sam Miller and defendant Van Wagenen, both members of the New York State Police Bureau of Criminal Investigation. According to Lozito's testimony, the two offered to have him released from jail if he would help them effect the arrests of certain specified individuals, including plaintiff. Lozito testified that he was released from jail when he agreed to cooperate, and was contacted about a week later to meet Miller and defendant Van Wagenen "on a back road," where he was introduced to defendant Hansen. Lozito stated that he was instructed to assist them in procuring heroin sales. He further testified:

Q: And they showed you a picture of Bruce Taylor?

A: Yeah.

Q: What did they say about Bruce Taylor?

A: That this is one guy that they want.

Q: And did they say anything to you at that time about how they were going to get Bruce Taylor?

A: They said either one way or the other, they would get him.

Q: And did they explain what they meant by either one way or the other?

A: I can't recall. Direct.

Q: What did you understand them to mean when they said that?

A: Well, they had it in for this Bruce Taylor. Either I set them up or they do it another way, I guess. In his own words.

Lozito further testified that he assisted defendant Hansen with various drug sales, and that he was with Hansen on the evening of March 15, 1974 at P & G's Bar. Lozito testified that he was sitting at a table in the bar with Hansen, and he did not witness a sale made by plaintiff. He further testified that defendant Hansen would not have been able to see such a sale either, because of plaintiff's location in the bar, and the number of people in the bar. This would corroborate the testimony of the plaintiff and of Lynch, who testified that she obtained the drugs from another individual in another area of the bar, and that the plaintiff did not participate in the sale.

Hansen and Van Wagenen testified at trial that Lozito was not under arrest at the time he assisted the defendants, a fact contradicted by Lozito's testimony before the grand jury and by arrest records presented by the plaintiff. As previously mentioned, both defendants also characterized Lozito as a "voluntary" informant, although Lozito testified that he felt compelled to cooperate with defendants in setting up a drug sale with the plaintiff. According to Lozito, Miller and Van Wagenen told him "if I didn't help them, they would make [the convictions] stick, and because of my police records before, in turn, I did help them." Hansen's account of the alleged sale also differs significantly in several other respects from those of Lozito, Lynch and the plaintiff.

Following the grand jury hearings, plaintiff moved to have his conviction vacated on the ground that new evidence presented by Lozito's testimony showed that his conviction was obtained by the use of perjured testimony and the withholding of evidence, namely, the identity and presence during the drug sale of Lozito. Plaintiff's conviction was ultimately vacated in December 1984 in Ulster County Court by presiding Judge Joseph Traficanti, Jr. Judge Traficanti found that members of the State Police, including defendant Van Wagenen, had met with Lozito in jail; that Lozito was indeed released from jail to assist in narcotics investigations, contrary to the testimony of defendants Hansen and Van Wagenen; that Lozito was present at the alleged drug sale which was the basis of Taylor's conviction; that Lozito's identity was not disclosed to the plaintiff; and that Lozito, although present at the criminal trial, did not testify, and "could well have supplied the inculpatory or exculpatory evidence to provide the jury with the full facts." Judge Traficanti stated that the failure of defendants Hansen and Van Wagenen to

disclose evidence concerning Lozito was "grossly negligent," and, "[c]onsidering the importance of Lozito's involvement in the buy and the fact that his testimony may well have been considered by the jury as corroborative of the co-defendant Lynch's exculpatory testimony regarding the defendant, the defendant was greatly prejudiced by the suppression of the identity of the informant and his true criminal status at the time of his cooperation with the police." *State of New York v. Taylor,* Ulster County Court, December 26, 1984.

After his conviction was vacated, plaintiff commenced the instant suit. This court has previously dismissed the complaint and a subsequent amended complaint as to all of the defendants except Hansen and Van Wagenen.[2] Now before the court is the motion of defendants Hansen and Van Wagenen for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants Hansen and Van Wagenen maintain that they are absolutely immune from claims under Section 1983 as prosecution witnesses. Moreover, defendants argue that plaintiff's allegations of an extra-judicial conspiracy between the witnesses and the district attorney's office to suborn perjured testimony and withhold Lozito's identity are not supported by proof sufficient to defeat a motion for summary judgment.

### Discussion

#### I. Witness Immunity

The Supreme Court held in *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), that police officers are absolutely immune from liability under 42 U.S.C. § 1983 for testifying falsely at trial. The holding in *Briscoe* is grounded on the common law rule that witnesses were absolutely immune from liability for claims arising out of their testimony at trial. *Briscoe,*

**2.** The original complaint was dismissed with prejudice and summary judgment granted as to defendants Francis Vogt, Michael Kavanagh, Ellen Donovan, and the Office of the Ulster County District Attorney by order of this court dated April 30, 1987. The complaint was also dismissed as to the County of Ulster, with leave for the plaintiff to serve an amended complaint.

The New York State Police was not dismissed, but the agency was not named as a defendant in the amended complaint.

The amended complaint was dismissed as to the County of Ulster with prejudice by order of this court dated November 14, 1989, leaving Hansen and Van Wagenen as the remaining defendants.

460 U.S. at 330–31, 103 S.Ct. at 1112–13. This common law rule was based on the belief that "the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." *Id.* at 333, 103 S.Ct. at 1114. The rationale behind the doctrine is that, without absolute immunity, a witness may be reluctant to testify at all, or may feel compelled to withhold or shade certain testimony in favor of the opposing party, for fear of a retributory lawsuit. *Id.; see also White v. Frank*, 680 F.Supp. 629, 633 (S.D.N.Y.), *appeal dismissed*, 855 F.2d 956 (2d Cir. 1988). Consequently, "[s]uch self-censorship would ... distort and inhibit the trial's truthfinding process." *White v. Frank*, 680 F.Supp. at 633.

■ While conceding that the defendants are immune from suit for statements made at trial, plaintiff has alleged the existence of an out-of-court conspiracy to present perjured testimony and to withhold exculpatory evidence between the state police witnesses and the district attorney's office. Plaintiff bases this claim on the Second Circuit's holding in *San Filippo v. U.S. Trust Co. of New York*, 737 F.2d 246, 255 (2d Cir.1984), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985). Both parties read *San Filippo* to mean that absolute witness immunity does not extend to extra-judicial conspiracies between witnesses and the prosecutor to present false testimony. Accordingly, plaintiff has attempted to produce evidence of a conspiracy between Hansen and Van Wagenen and members of the Ulster County District Attorney's Office in order to defeat defendants' motion for summary judgment. The sole factual assertion presented by plaintiff supporting this allegation of conspiracy consists of statements made by the plaintiff at a deposition that he overheard assistant district attorney Ellen Donovan speaking with the police defendants during the trial. This type of evidence is wholly insufficient to prove the alleged conspiracy, since such meetings are routine and necessary in the preparation of evidence for trial. *San Filippo*, 737 F.2d at 256; *see also Weg v. Macchiarola*, 654 F.Supp. 1189, 1194 (S.D.N.Y.1987).

■ However, this court's analysis of the defendants' motion does not end there. Plaintiff's papers may be fairly read as asserting the existence of an extra-judicial conspiracy between the defendant police officers alone. This court reads the Second Circuit's decision in *San Filippo* as standing for the proposition that such a conspiracy by police officer witnesses is actionable under 42 U.S.C. § 1983. In *San Filippo*, the plaintiff filed suit against a bank and two of its officers, alleging that they conspired with an assistant district attorney to deprive the plaintiff of his civil and constitutional rights by falsely testifying to a grand jury concerning plaintiff's involvement in the fraudulent procurement of a loan from the defendant bank. With respect to the bank officers' claim of absolute immunity under *Briscoe*, the *San Filippo* court stated that *Briscoe* was "expressly limited to immunity for testimony given in judicial proceedings, and its rationale—to encourage witnesses to come forward with all they know—does not justify extending that immunity to cover extra-judicial conspiracies between witnesses and the prosecutor to give false testimony." *San Filippo*, 737 F.2d at 255.

It is the opinion of this court that the holding in *San Filippo* also operates to make extra-judicial conspiracies between witnesses who are public officials, such as police officers, actionable under Section 1983. This would not be the first court to construe *San Filippo* in this manner. In *White v. Frank*, 680 F.Supp. 629 (S.D.N.Y. 1988), the district court held that absolute witness immunity was not applicable to police officer witnesses who conspired with each other because of the holding in *San Filippo* that "[a]bsolute immunity does not extend to extra-judicial conspiracies to give false testimony." *Id.* at 639.[3]

---

**3.** Plaintiff's conspiracy claim in *White v. Frank* was brought pursuant to 42 U.S.C. § 1985(3), which prohibits conspiracies to deprive members of racial or class-based minorities of constitutional rights. However, this court sees no reason to distinguish the *White v. Frank* court's ruling on the effect of an extra-judicial conspir-

Furthermore, there is nothing presented by the parties that would lead the court to believe that the holding in *San Filippo* is limited only to a conspiracy between witnesses and the prosecutor. A review of the case law concerning witness immunity, as well as the policy considerations underlying the doctrine, convince the court that any extra-judicial conspiracy involving a public official which deprives a person of a constitutional right gives rise to a Section 1983 claim. In *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970), the Supreme Court stated that the involvement of a state official in a conspiracy to deny constitutional protections "provides the state action essential to show a direct violation of [the person's constitutional] rights...." As the Second Circuit stated in *Dahlberg v. Becker*, 748 F.2d 85, 89 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985), to make out a sufficient cause of action under Section 1983, the plaintiff must "show that the party charged with the deprivation is a person who is a state official or someone whose conduct is otherwise chargeable to the State." Thus, it is not the participation of the prosecutor, but the actions of a *state official*, which provide the basis for a claim under Section 1983.

A number of other courts have held that public official witnesses who conspire among themselves, or witnesses who conspire with a public official other than a prosecutor, are subject to suit under Section 1983. In *Knudsen v. D.C.B., Inc.*, 592 F.Supp. 1232 (N.D.Ill.1984), the court denied a police witness's motion to strike a paragraph from plaintiff's complaint alleging that the police witness gave perjured testimony at plaintiff's criminal trial in furtherance of a conspiracy between the police witness and an employee of a store from which plaintiff allegedly stole merchandise. While the court recognized that the police officer was immune from suit for perjured testimony under Section 1983, the court stated:

"[p]laintiff [did] not allege that [the police officer's] testimony was the act which violated plaintiff's rights; rather, it [was] merely alleged that such testimony was an act in furtherance of an underlying conspiracy between the defendants to harass plaintiff and otherwise deny his constitutional rights. Insofar as plaintiff does not seek to recover solely based on [the police officer's] alleged perjury, [the police officer's] motion to strike must be denied."

*Id.* at 1235.

*See also Barrett v. United States*, 622 F.Supp. 574, 586–87 n. 7 (S.D.N.Y.1985), *aff'd*, 798 F.2d 565 (2d Cir.1986) (*San Filippo* holds that absolute witness immunity "does not extend to conspiracy with public officials to present [perjured] testimony."); *Duncan v. Fowler*, 569 F.Supp. 692 (W.D. N.C.1983), *aff'd*, 735 F.2d 1354 (4th Cir. 1984) (evidence of conspiracy between witnesses, police, and district attorney would give rise to Section 1983 claim); *Stevens v. Brown*, 564 F.Supp. 368 (W.D.N.C.1983) (proof of conspiracy between police officer witnesses would state claim under Section 1983);[4] *White v. Frank, supra.*

The policy considerations underlying the *Briscoe* decision are not inconsistent with imposing Section 1983 liability on witnesses who conspire outside of the judicial proceedings to present false testimony, or to withhold evidence. As the court stated in *Stevens:*

There is a strong public purpose to encourage free testimony in criminal cases.... However, there has not been suggested to me, and I am unable to divine, any public purpose based on public health, safety, welfare or morals, or any other grounds, which is served by protecting witnesses from liability in damages caused by a successful *conspiracy*, that is, deliberate advance planning, to procure a conviction by the use of

---

acy on *Briscoe* witness immunity from the issues presented here.

**4.** In both *Duncan* and *Stevens,* the court held that while evidence that a conspiracy existed

would support a claim under Section 1983, insufficient evidence of a conspiracy was presented by the plaintiffs.

false testimony. The arm of the prosecution is not so weak that it will be paralyzed by making liable in damages those proved to have conspired unlawfully to convict and to corrupt the processes of justice by the deliberate use of false testimony.

*Stevens*, 564 F.Supp. at 370. (emphasis in original)[5]

As the court states in *San Filippo*, "no court has yet held that absolute immunity from prosecution for false testimony extends to conspiracy with *public officials* to present false testimony." *San Filippo*, 737 F.2d at 254 (emphasis added). The proposition for which *San Filippo* stands is broader than its literal holding, in that its underlying rationale would clearly be frustrated by limiting its application to conspiracies involving the prosecutor. Accordingly, a public official, such as a police officer, participating in a conspiracy to deprive a person of rights guaranteed under the Constitution, may be liable for damages in a Section 1983 action.

## II. *Summary Judgment*

In the instant motion for summary judgment, then, the proper inquiry is not whether evidence has been presented of a conspiracy between defendants and the prosecutor, but whether evidence has been presented that defendants participated in an extra-judicial conspiracy to deny plaintiff rights guaranteed by the Constitution. Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can show "that there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden rests on the moving party to demonstrate the lack of a genuine issue of fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the record must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, the nonmoving party "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). To survive such a motion, the party opposing summary judgment must provide the court with " 'concrete evidence from which a reasonable [trier of fact] could return a verdict in his favor.' " *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)).

■ To support a claim of conspiracy to deprive him of his civil rights, the plaintiff must prove that defendants "acted in a willful manner, culminating in an agreement, understanding, or 'meeting of the minds,' that violated plaintiff's rights, privileges, or immunities secured by the Constitution or federal courts." *Katz v. Morgenthau*, 709 F.Supp. 1219, 1231 (S.D.N.Y.), *aff'd in part, rev'd in part*, 892 F.2d 20, (2d Cir.1989); *see also Dahlberg v. Becker*, 748 F.2d at 93. Since "conspiracy is by its very nature a secretive operation," the existence of a conspiracy may be established by circumstantial evidence. *United States v. Diaz*, 878 F.2d 608, 618 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989) (quoting *United States v. Provenzano*, 615 F.2d 37, 45 (2d Cir.), *cert. denied*, 446 U.S. 953, 100 S.Ct. 2921, 64 L.Ed.2d 810 (1980)). As noted above, the evidence of a conspiracy between the defendants and the prosecutor in the instant action, i.e., that plaintiff witnessed conversations between the assistant district attorney and witnesses during his criminal

---

**5.** Analogous to the situation presented in the case at bar is Justice White's caution against overextending the absolute immunity granted to prosecutors in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Justice White warned that extending absolute immunity to "suits based on claims of unconstitutional suppression of evidence ... would threaten to *injure* the judicial process and to interfere with Congress' purpose in enacting 42 U.S.C. § 1983...." *Imbler*, 424 U.S. at 433, 96 S.Ct. at 996 (White, J., concurring) (emphasis in original).

trial, is insufficient under the standard articulated in *San Filippo*. However, the plaintiff has presented sufficient evidence from which a conspiracy between defendants Hansen and Van Wagenen could be inferred. Existence of a motive to conspire to convict plaintiff is indicated by Lozito's testimony that the State Police "had it in" for plaintiff. The defendants' similar testimony disguising the character of Lozito's participation in the drug sale is evidence from which a reasonable juror could infer an agreement or "meeting of the minds."

As noted above, Lozito was not identified to the defense before trial. It is not clear from the evidence presented whether his identity was concealed by defendants alone, or whether the prosecutor's office also had knowledge of Lozito's role in the drug sale. Nevertheless, the defendants' testimony at trial, taken in light of the other evidence provided by the plaintiff, was at best, misleading to the defense, and the defendants' characterization of Lozito as a voluntary police informant may well have prevented the defense from discerning whether Lozito could have provided testimony to exculpate Taylor.

Thus, the evidence presented by the plaintiff of a conspiracy between the defendants is sufficient to defeat defendants' motion for summary judgment.

### III. *Constitutional Violation*

 The plaintiff must also show that he was denied rights secured by the Constitution to support a claim under Section 1983. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930, 102 S.Ct. 2744, 2750, 73 L.Ed.2d 482 (1982); *see also Strength v. Hubert*, 660 F.Supp. 878, 887 (M.D.Ala.1987), *aff'd in part, rev'd in part*, 854 F.2d 421 (11th Cir.1988). The suppression of evidence favorable to the defendant, including evidence that would affect the credibility of prosecution witnesses when the reliability of those witnesses may be determinative of guilt or innocence, violates the due process guarantees of the Fourteenth Amendment. *United States v. Bagley*, 473 U.S. 667, 673–77, 105 S.Ct. 3375, 3379–81, 87 L.Ed.2d 481 (1985); *see also Brady v. Maryland*, 373

U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Here the defendants participated in soliciting Lozito's cooperation in the drug operation, attempted to arrange a sale with plaintiff, leading to his arrest, and appeared as key witnesses for the prosecution. Lozito was not identified to the defense before trial, and the defendants misrepresented his status, preventing the defense from determining if he could provide testimony to exculpate the plaintiff. Lozito's testimony could have corroborated that of Lynch, and impeached the credibility of the defendant police witnesses. The conduct of the defendants may be said to have deprived plaintiff of due process because "there is a reasonable probability that, but for [the conduct of the defendants], the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383 (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* Indeed, Judge Traficanti determined that this probability existed on review of these very same facts.

Accordingly, defendants' motion for summary judgment dismissing the complaint is denied.

IT IS SO ORDERED.