United States Court of Appeals
Fifth Circuit

**F I L E D**

December 19, 2003

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

—————————————

No. 02-41377

—————————————

RICHARD R. RICHARD, JR., on behalf of himself and all others
similarly situated,

Plaintiff - Appellant,

versus

HOECHST CELANESE CHEMICAL GROUP, INC., Hoechst
Celanese Chemical Group; SHELL OIL COMPANY, doing business as
Shell Chemical Company; HOECHST CELANESE CORPORATION,
Hoechst Celanese Corporation; E. I. DUPONT DE NEMOURS AND
COMPANY,

Defendants - Appellees.

—————————————————————————

Appeal from the United States District Court
For the Eastern District of Texas

—————————————————————————

Before WIENER, CLEMENT, and PRADO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

This case arises from a class action lawsuit brought by Richard R. Richard ("Richard"), on

behalf of himself and a putative class consisting of parties who allegedly suffered damages from

inherently defective polybutylene ("PB") plumbing systems installed in their homes. Richard alleges

that Hoechst Celanese Chemical Group, Hoechst Celanese Corporation (collectively "Hoechst"), Shell

1

Oil Company ("Shell"), and E.I. DuPont Nemours ("DuPont") caused the putative class's injuries through their manufacture, promotion, and sale of PB for use in residential and commercial plumbing systems. Richard appeals the district court's dismissal of his class action lawsuit for lack of subject matter jurisdiction with regard to his 42 U.S.C. § 1983 due process claim, and dismissal for failure to state a claim upon which relief can be granted with regard to his RICO claims.

## I. FACTS AND PROCEEDINGS

Richard owns and lives in a mobile home with a PB plumbing system. Over time, the leaks from the PB plumbing system have caused substantial damage to Richard's mobile home. Richard contends that the PB plumbing system is inherently defective.

PB is a by-product of oil refining. Shell, the exclusive seller of PB resin in the late 1970's, developed flexible PB pipes, which other companies like DuPont and Hoechst manufactured. DuPont and Hoechst also used PB resin to develop raw materials for joint fittings in PB plumbing systems.

### A. Richard's Allegations

Richard alleges that Shell, DuPont, and Hoechst (collectively the "Appellees") administered a complex scheme to mislead buyers into believing that PB plumbing systems were suitable for use as potable water distribution systems. To this end, the Appellees allegedly claimed that PB plumbing systems were superior to copper plumbing systems based on their representations that PB systems were lightweight, inexpensive, better able to withstand freezing temperatures, easier to install and purportedly enjoyed a lifetime of 50 years. According to Richard, the Appellees knew that these representations were untrue because their scientists allegedly reported that the PB plumbing systems would degrade even when exposed to low concentrations of chlorine typically found in municipal

2

water systems. Richard claims that in spite of this knowledge, the Appellees concealed the information and continued to market these products until approximately 1996.

Richard further claims that before purchasing his mobile home in 1997, he inquired about its plumbing system. The seller informed him that the mobile home was equipped with an exceptionally reliable PB plumbing system that would likely outlast the mobile home itself. According to Richard, the seller unwittingly made this misrepresentation in reliance on the promotional materials that the Appellees promulgated. Taking these misrepresentations into consideration, Richard purchased the home.

## B. The *Cox* and *Spencer* Class Action Settlements

The defective PB plumbing systems caused considerable litigation. In 1994, a group of plaintiffs reached a class action settlement in a Texas state court with the Appellees, but the Texas court rejected the settlement. *Beeman v. Shell Oil Co.*, No. 93-047363 (Dist. Ct., Harris County, Tex.). In the meantime, other plaintiffs filed separate PB class actions in Alabama state court and Tennessee state court. *Spencer v. Shell Oil Co.*, No. CV94-074 (Cir. Ct., Greene County, Ala.); *Cox v. Shell Oil Co.*, No. 18,844, 1995 WL 775363 (Chanc. Ct., Obion County, Tenn.). In 1995, the Appellees entered into a class action settlement in *Cox*. The Tennessee state court approved a national settlement, which required Shell and Hoechst to contribute $950 million to replace eligible consumers' leaking PB plumbing systems and to reimburse them for the property damage which the leaks had caused. In *Spencer*, the Alabama state court approved a class action settlement that required DuPont to contribute further sums toward the repair and replacement of PB plumbing systems.

## C. Proceedings in the Present Action

3

Richard filed his Original Class Action Complaint in the Eastern District of Texas on January 10, 2000, on behalf of himself and a class of similarly situated persons pursuant to Federal Rule of Civil Procedure Rule 23.  In his Second Amended Complaint, he defined the Class as follows:

> All Texas citizens, residents and entities authorised [sic] to do business in Texas that own plumbing systems in structures in Texas and elsewhere, in which there is polybutylene plumbing and over which Tennessee and Alabama courts lacked subject matter jurisdiction.

> All U.S. citizens and entities that were excluded from the settlement classes of *Cox v. Shell Oil Co.*, No. 18,844 (Tenn. Chanc. Ct., Obion City) and *Spencer v. Shell Oil Co.*, No. CV94-074 (Greene Cty., Ala.) because defects in their polybutylene plumbing systems were defined as non-qualifying.

> All U.S. citizens and entities that own structures containing polybutylene plumbing systems and have never participated in a polybutylene class action in a court of competent personal and subject matter jurisdiction.

Richard claimed that the Appellees were liable for the damages t hat he and the class members sustained as a result of the leaks in their PB plumbing systems.  The complaint cited theories of conspiracy, strict liability, negligence, and breach of implied warranties.  Richard also asserted that the Appellees violated his due process rights, giving rise to a cause of action under 42 U.S.C. § 1983.  He based this assertion on his allegation that the Appellees and class counsel in *Cox* colluded in setting up procedural safeguards for class member certification.  Richard also alleged that as an absent class member of the *Cox* and *Spencer* suits, he did not receive adequate notice, had no opportunity to opt-out, and did not receive adequate representation.  Finally, Richard amended his complaint to include claims under 18 U.S.C. § 1962(a) of the RICO Act.

On May 25, 2001, Richard and DuPont reached an agreement and jointly moved for preliminary class certification as to DuPont only, and for preliminary approval of a settlement

4

agreement. Shell and Hoechst opposed the motion. On March 30, 2002, the district court issued its memorandum and opinion, holding that: (1) the court did not have jurisdiction over Richard's § 1983 claim because of the *Rooker-Feldman* doctrine; (2) the court had subject matter jurisdiction over the federal RICO claims, but those claims failed to state a claim upon which the court could grant relief under Federal Rule of Civil Procedure 12(b)(6); and (3) Richard did not satisfy requirements for class certification.

Richard timely appeals the district court's dismissal of his claims for lack of subject matter jurisdiction and failure to state a claim under Rule 12(b)(6).

## II. STANDARD OF REVIEW

We review *de novo* a district court's dismissal of a claim for lack of subject matter jurisdiction. *Atlas Global Group, L.P. v. Grupo Dataflux*, 312 F.3d 168, 170 (5th Cir. 2002). We also review *de novo* a district court's dismissal of a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Herrmann Holdings, Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 557 (5th Cir. 2002).

## III. DISCUSSION

Richard raises two issues on appeal. First, Richard argues that the district court erred in finding that the *Rooker-Feldman* doctrine bars consideration of his 42 U.S.C. § 1983 due process claim. He claims that because *Rooker-Feldman* is consistent with principles of full faith and credit, this Court cannot apply *Rooker-Feldman* to bar a claim challenging a judgment allegedly reached without constitutionally sufficient procedural safeguards. Second, he contends that the district court erred in dismissing his RICO claim because it erroneously construed 18 U.S.C. § 1964 to preclude equitable remedies for private plaintiffs. We address these arguments in turn.

**A. Richard's § 1983 Claim**

5

In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Supreme Court held that state courts must resolve constitutional questions that arise during their proceedings. If the state trial court errs in deciding the constitutional issues, the judgment is not void, but the appropriate state appellate court must correct it. *Rooker*, 263 U.S. at 416. Any subsequent recourse to federal court is limited to an application for a writ of certiorari to the United States Supreme Court. *Id.* Consequently, lower federal courts lack jurisdiction to review state court judgments when the constitutional claims are "inextricably intertwined" with the challenged state court judgment. *Feldman*, 460 U.S. at 483 n.16.

Our sister circuits have applied the *Rooker-Feldman* doctrine to hold that a federal court does not have jurisdiction over a class action suit that a state court has already adjudicated, even where an absent class member alleges procedural due process violations. *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510-11 (7th Cir. 1996); *Snider v. City of Excelsior Springs, Mo.*, 154 F.3d 809, 812 (8th Cir. 1998). In *Kamilewicz*, the plaintiffs argued that *Rooker-Feldman* should not apply to an Alabama state court judgment because the Alabama court did not comply with the procedural safeguards necessary for exercising personal jurisdiction over absent class members. *Kamilewicz*, 92 F.3d at 509. Despite alleging these deficiencies, the plaintiffs also claimed that they did not seek to overturn the Alabama judgment. *Id.* The Seventh Circuit found these positions to be in conflict, and reasoned that the plaintiffs merely sought to set aside a state court judgment. *Id.* at 510. Because the plaintiffs did not present an independent claim, the court applied *Rooker-Feldman*. *Id.*

In *Snider,* absent class members of a state court class action suit alleged that they never received proper notice, and that as a result, they were never parties to the litigation. 154 F.3d at 812. Because they did not receive notice, the absent class members argued that *Rooker-Feldman* should

6

not apply. *Id.* The court, however, did not agree. *Id.* According to the Eighth Circuit, if the federal court found that the absent class members were not parties, then the federal court would have to find that the state court wrongly certified the class and wrongly ordered a final judgment. *Id.* Such a holding would create a procedural due process exception to the *Rooker-Feldman* doctrine, but no such exception exists. *Id.; accord Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994) (refusing to find a due process exception to *Rooker-Feldman*).

While we find this reasoning persuasive, we also recognize that the *Rooker-Feldman* doctrine only applies insofar as a state court judgment merits full faith and credit. *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 373 (1996) (stating that a federal court must give preclusive effect to a state court judgment only to the extent that the law of the state would give preclusive effect to the judgment); *In re Lease Oil Antitrust Litigation*, 200 F.3d 317, 319 n.1, 320 (5th Cir. 2000) (noting that the *Rooker-Feldman* doctrine is consistent with the Full Faith and Credit Act, 28 U.S.C. § 1783); *Gauthier v. Continental Diving Services*, 831 F.2d 559, 561 (5th Cir. 1987) (declining to apply the *Rooker-Feldman* doctrine because doing so would require the federal court to give greater deference to a state court judgment than that state's courts would give the judgment); *Kamilewicz v. Bank of Boston Corp.*, 100 F.3d 1348 (7th Cir. 1996) (Easterbrook, J., dissenting on request for rehearing en banc). Federal jurisdiction is therefore proper under *Rooker-Feldman* if the state law does not provide preclusive effect to the state court judgment.

In a class action lawsuit, a court may exercise jurisdiction over absent class members only if the court follows certain due process procedures. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). A court must ensure that class members have received adequate notice, representation, and an opportunity to opt-out. *Id.* at 812. The settlement judgment has no preclusive

effect if the court does not comply with these procedures. *Id.* at 805. Thus, to merit full faith and credit, a state must adhere to the due process guidelines of *Shutts.*

In light of *Shutts*, it would seem that *Rooker-Feldman* does not apply where a state court has not followed the due process requirements for class certification. In the instant case, Richard attempts to escape the reach of *Rooker-Feldman* by alleging such procedural infirmities. He argues that as a result of the due process deficiencies, the *Cox* state court did not properly exercise jurisdiction over him.

Given the class action nature of this case, it is necessary to resolve the following tension in applying *Rooker-Feldman*. On the one hand, federal courts can examine jurisdictional matters brought before them. If the absent class members were not subject to the state court's jurisdiction or bound by its judgment, then federal courts would have jurisdiction over the absent class members' federal claims. Richard's jurisdictional allegations would thus seem to require a federal court to review whether federal jurisdiction exists, which would necessitate reviewing the disputed findings in *Cox*.

On the other hand, *Rooker-Feldman* prohibits federal review of substantive state court findings. *Rooker*, 263 U.S. at 416. In class action suits, the findings related to procedural due process determine class size, which ultimately affects the final judgment. The findings directly affect the substantive outcome, so challenging them would seem to conflict with the *Rooker-Feldman* doctrine. Here, Richard's allegations indisputably denounce the express findings of the *Cox* state court. Because his challenge would result in setting aside a state court judgment, *Rooker-Feldman* seems to bar federal review of these findings.

Reconciling these seemingly conflicting positions requires further analysis of *Rooker-Feldman*. As noted previously, the Supreme Court held in *Feldman* that "[i]f the constitutional claims presented

8

to a United States District Court are inextricably intertwined" with the state court's judgment, then the federal district court has no jurisdiction. 460 U.S. at 483 n.16. This Court has determined that issues are "inextricably intertwined" when a plaintiff casts a complaint in the form of a civil rights action simply to circumvent the *Rooker-Feldman* rule. *Liedtke*, 18 F.3d at 317.

The *Feldman* holding appears to squarely fit Richard's situation. The *Cox* court's findings that allow for certification are "inextricably intertwined" with Richard's constitutional challenge to the state's compliance with due process requirements. A federal court cannot examine the due process deficiencies in *Cox* without disturbing the underlying judgment.

Moreover, the *Liedtke* holding is also applicable here. In order to comply with *Liedtke*, a plaintiff cannot assert a § 1983 claim to circumvent the *Rooker-Feldman* doctrine. 18 F.3d at 317. However, as discussed below, Richard's § 1983 claim is clearly untenable. His blatant nonconformity with the requirements of § 1983 thus suggests that he has merely cast his complaint in the form of a civil rights action in an attempt to circumvent *Rooker-Feldman*. Given that his underlying § 1983 argument fails, the class action procedural issues that Richard raises are irrelevant. Because Richard's § 1983 claim merely serves as an instrument for evading *Rooker-Feldman*, that doctrine bars his claim.

To state a claim under § 1983, a plaintiff must allege facts tending to show that the defendant has acted "under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982); *Blum v. Yaretsky*, 457 U.S. 991 (1982); *Flagg Bros. v. Brooks*, 436 U.S. 149 (1978). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Sullivan*, 526 U.S. at 50. (internal quotations omitted). A plaintiff must show that the party charged with depriving the

9

plaintiff of her federal right is an entity that can be fairly described as a state actor. *Lugar,* 457 U.S. at 937.

This Court has previously outlined the various tests that the Supreme Court employs to determine whether a private party has acted under color of state law. *Bass v. Parkwood*, 180 F.3d 234, 241-43 (5th Cir. 1999) (applying the tests to hold that a private mental institution did not act under color of state law by committing the plaintiff). According to the public function test, a private entity acts under color of state law when the entity performs a function which is "exclusively reserved to the state." *Flagg Bros.*, 436 U.S. at 157-58. (internal quotations omitted); *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989). The state compulsion (or coercion) test holds the state responsible "for a private decision only when [the state] has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (internal quotations omitted). Similarly, the nexus or state action test finds state action where the state has "so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357-58 (1974); *see also Lugar*, 457 U.S. at 941-42 (1982).

Richard argues that Appellees acted under color of state law based on the state action test. He relies on *Lugar*, in which the Supreme Court found "joint participation" between a private actor and the state. 457 U.S. at 942. In *Lugar*, a creditor allegedly failed to meet the statutory requirements for enforcing attachment of the debtor's property, yet state officials seized the property without allowing the debtor to defend the action. *Id.* at 925. The Court found joint participation because the state officials committed an *ex parte* action at the request of a private party. *Id.* at 942. In reaching

10

this conclusion, the Court stated that to find state action under § 1983, the plaintiff must satisfy two criteria. *Id.* at 937. First, the deprivation at issue must "be caused by the exercise of some right or privilege created by the [s]tate or by a rule of conduct imposed by the state or by a person for whom the [s]tate is responsible." *Id.* Second, the private "party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.*

Although Richard's allegations are sufficient to satisfy the first prong of this test, the allegations fall well short of satisfying the second prong. Richard cannot show that the Appellees can "fairly be said to be . . . state actor[s]." *Lugar*, 457 U.S. at 942. Richard attempts to reach this conclusion by reasoning that a private party is a state actor if the party either (1) complies with a wrong judgment, or (2) commits wrongful acts that influence a judgment. Both arguments fail. With respect to the first argument, this Court's precedent establishes that even if a court wrongly decides a case, the fact that a private party complies with that wrong decision does not constitute state action. *Landry v. A-Able Bonding, Inc.*, 75 F.3d 200 (5th Cir. 1996). In *Landry*, the plaintiff brought a § 1983 suit for false imprisonment against a bail bondsman. *Id.* Although the bondsman possessed a state-issued warrant, this Court found that he had not acted under color of state law because he did not communicate that he was acting under state authority during the seizure. *Id.* at 204-05. Complying with the state order did not subject him to suit under § 1983. *Id.* Accordingly, even if the *Cox* court wrongly decided the case, the fact that the Appellees complied with the judgment does not imply that the Appellees acted under color of state law.

With respect to Richard's second argument, Richard contends that committing a wrongful act which influences a judgment amounts to "joint participation" with a state official. In support of this contention, Richard relies on *Dennis v. Sparks,* 449 U.S. 24 (1980). In *Sparks*, the Supreme Court

11

held that private parties acted under color of state law when they conspired *with* a judge. *Id.* at 28. The judge's conscious role in the illegality of the judgment caused the private parties' conduct to be actionable under § 1983. *Id.* In reaching this conclusion, the Court pointed out that "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Id.*

Consistent with the *Sparks* holding, the Second Circuit has rejected the argument that wrongful action by counsel qualifies as "state action" under § 1983. *Dahlberg v. Becker*, 748 F.2d 85, 92 (2d Cir. 1984). In *Dahlberg*, the plaintiff alleged that the defendant and her attorneys submitted a false affidavit which influenced a state court decision. *Id.* at 87-88. The court held that if "a judge . . . unknowingly signs a defective order that has been prepared and submitted to him by an attorney," this does not imply that the attorney acted under color of state law. *Id.*

We agree with the Second Circuit's reasoning in *Dahlberg*. If a judge reaches a decision based on misinformation that counsel provides, the issuance of the decision does not imply that counsel acted under color of state law. *Id.* Applying this principle to Richard's situation leads us to hold that Appellees did not act under color of state law. Like *Dahlberg*, and unlike *Sparks*, Richard does not contend that the judge knowingly participated in the alleged conspiracy. Richard only alleges that the Appellees conspired with opposing counsel *before* a judge. Although the Appellees may have colluded with opposing counsel, Richard fails to allege that the state judge was in any way involved in the misconduct. Indeed, Richard characterizes the state judge as "an innocent agent." Thus, the Appellees are not state actors under § 1983, and Richard fails to state a claim under § 1983.

The failure of Richard's § 1983 claim persuades us that his claim serves only as a means for challenging the state court judgment in federal court. As such, it falls within the scope of claims that

we may dismiss "for lack of subject matter jurisdiction because of . . . [the] inadequacy of the federal claim . . . ." *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89 (1998). Richard has attempted to circumvent the *Rooker-Feldman* doctrine by intertwining a groundless § 1983 claim with the state court findings. His jurisdictional challenge to the *Shutts* procedures is irrelevant because the underlying federal claim is unfounded. Under these circumstances, applying the *Rooker-Feldman* doctrine to bar his claim is entirely appropriate.

## B. Richard's RICO Claim

Richard contends that the district court erred in dismissing his claim for equitable relief in the form of a disgorgement of the Appellees' past profits. He argues that equitable relief should be available for private civil RICO plaintiffs under 18 U.S.C. § 1964(a)-(c). This Court has not decided whether equitable relief is available to a private civil RICO plaintiff. *Price v. Pinnacle Brands*, 138 F.3d 602, 605 n.5 (5th Cir. 1998) (stating that this Court "has specifically reserved ruling on whether all forms of injunctive relief and other equitable relief are foreclosed to private plaintiffs under RICO") (internal quotations omitted). The circumstances before us do not necessitate that we reach this question today. Even if equitable relief were available to a private party, disgorgement is not a proper remedy given the circumstances present in this case. Section 1964(a) provides:

> The district courts of the United States shall have jurisdiction *to prevent and restrain violations* of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restriction on the future activities or investments of any person including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provisions for the rights of innocent persons.

18 U.S.C. § 1964(a). The Second Circuit has considered the conditions for disgorgement under this statute in a RICO suit. *United States v. Carson*, 52 F.3d 1173, 1181 (2d Cir. 1995). The Second Circuit interpreted § 1964(a) to mean that equitable remedies are only proper to "prevent and restrain *future* conduct rather than to punish *past* conduct." *Id.* at 1182. The court reasoned that the three examples of permissible remedies in § 1964(a) were forward-looking, and focused on preventing future RICO violations. *Id.* at 1181. With respect to the disgorgement remedy sought, the Second Circuit noted that disgorgement is generally available under § 1964. *Id.* However, when disgorgement is sought for the purpose of compensating a party for past injuries, the court held that the plain language of § 1964 bars relief. *Id.* at 1182.

We agree with the Second Circuit's reasoning in *Carson*. Section 1964(a) establishes that equitable remedies are available only to prevent ongoing and future conduct. Here, Richard does not seek disgorgement to "prevent and restrain" the Appellees from producing PB plumbing systems. In fact, in his Second Amended Complaint, Richard concedes that the Appellees no longer market the plumbing systems. Furthermore, Richard fails to argue that such disgorgement would prevent manufacturers of similar products from committing similar injuries. Simply stated, he fails to argue that disgorgement would "prevent and restrain" similar RICO violations in the future. Absent this argument, Richard's disgorgement claim seems to do little more than compensate for the alleged loss. The disgorgement claim is therefore impermissible under § 1964(a). By failing to state a proper remedy, Richard's RICO claim is void.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court to dismiss Richard's § 1983 claim based on the district court's lack of subject matter jurisdiction under *Rooker-Feldman*.

14

We also AFFIRM the judgment of the district court to dismiss Richard's RICO claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

WIENER, Circuit Judge, Concurring in part and dissenting in part:

I concur with the panel majority's disposition of this appeal in every respect except for its treatment of the potential availability of disgorgement of profits as an equitable remedy under 18 U.S.C. § 1964. More specifically, I cannot read § 1964(a) or the Second Circuit's opinion in United States v. Carson[1] to eschew the possibility of disgorgement in the instant case. I agree, as does the panel majority, with the Carson court's restriction of equitable remedies to prevent or restrain future conduct rather than to punish past conduct,[2] but, respectfully, I find illogical the panel majority's application of that principal to the instant case.

It is true that Richard does not seek disgorgement to prevent or restrain the production of PB Plumbing Systems, which all acknowledge are no longer produced and marketed. The permissible purposes of disgorgement as an equitable remedy are not, however, so limited as to be available only to prevent or restrain the continued production and marketing of the particular product that produced the tainted profits in question. First, because the profits disgorged in a civil RICO class action are not necessarily distributed to the class members ratably according to the quantum of their respective injuries, the remedy is not analogous to compensatory damages. Second, disgorgement of ill-gotten gains is closely analogous to the equitable remedy of exemplary damages, as the principal purpose is not simply to punish the offending parties for having conspired to make the illicit profits but to convey a strong message, to the conspirators and to third parties alike, that there is yet another disincentive to engaging in such proscribed conduct. Thus, it seems clear to me that the primary thrust of disgorgement is to "prevent and restrain" the offending parties —— as well as all potential malefactors

---

[1] 52 F.3d 1173 (2d Cir. 1995).

[2] Id. at 1182.

who receive the message —— from engaging in such activities with <u>any</u> product, not just the single discontinued product that happened to have been the object of the proscribed behavior alleged in the particular case.

Neither do I find it determinative that Richard failed to state explicitly in his prayer for the disgorgement remedy that disgorgement "would prevent manufacturers of similar products from committing similar injuries." It has to be self-evident to courts and litigants alike that a prayer for disgorgement of profits in a case like this one is intended to prevent and restrain similar future conduct. To require the incantation of those talismanic words —— jurisprudential, not statutory —— would be to require a hollow act and to elevate form over substance. By its very nature, disgorgement is designed to "prevent manufacturers of similar products" from engaging in such conduct in the future, making incidental at best any element of compensation to class members.

As I disagree with the conclusion of my learned colleagues of the panel majority that Richard's RICO claim is void for failure to state a proper remedy, I respectfully dissent.