**UNITED STATES of America,**
**Plaintiff,**

v.

**PHILIP MORRIS USA, INC.,**
**f/k/a Philip Morris, Inc.**
**et al., Defendants.**

**No. CIV.A. 99–2496(GK).**

United States District Court,
District of Columbia.

May 21, 2004.

Sharon Y. Eubanks, Stephen D. Brody, Frank J. Marine, Kenneth E. Sealls, U.S. Department of Justice, Washington, DC, for Plaintiff.

## MEMORANDUM OPINION

KESSLER, District Judge.

This matter is now before the Court on Defendants' Motion for Partial Summary Judgment Dismissing the Government's Disgorgement Claim ("Motion"). Upon consideration of the Motion, the Government's Opposition, the Reply, the Surreply [1] and the entire record herein, and for the reasons stated below, the Motion is **denied.**

## I. BACKGROUND

Plaintiff, the United States of America (the "Government") has brought this suit against the Defendants [2] pursuant to Sections 1962(c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* [3] De-

---

1. On December 1, 2003, the Court entered ORDER # 445, granting the United States' Unopposed Motion for Leave to File a Surreply to Defendants' Reply Brief in Further Support of Their Motion for Partial Summary Judgment Dismissing the Government's Disgorgement Claim.

2. Defendants are Philip Morris USA Inc. (f/k/a Philip Morris Incorporated), R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation (individually and as successor by merger to the American Tobacco Company), Lorillard Tobacco Company, Altria Group Inc. (f/k/a Philip Morris Companies, Inc.), British American Tobacco (Investments), Ltd., The Council for Tobacco Research–U.S.A., Inc., the Tobacco Institute, Inc., and The Liggett Group, Inc.

3. The Complaint originally contained four claims under three statutes. On September 28, 2000, the Court dismissed Count One (pursuant to the Medical Care Recovery Act,

fendants are manufacturers of cigarettes and other tobacco-related entities. The Government seeks injunctive relief and disgorgement of $280 billion dollars [4] of ill-gotten gains for what it alleges to be Defendants' unlawful conspiracy to deceive the American public. The Government's Amended Complaint describes a four-decade long conspiracy, dating from at least 1953, to intentionally and willfully deceive and mislead the American public about, among other things, the harmful nature of tobacco products, the addictive nature of nicotine, and the possibility of manufacturing safer and less addictive tobacco products. Amended Complaint ("Am. Compl.") at ¶ 3.

## II. ANALYSIS

Defendants seek partial summary judgment dismissing the Government's disgorgement claim on the ground that it fails to meet the standard set forth in 18 U.S.C. § 1964(a), the provision which provides statutory remedies for RICO violations. Defendants argue that any disgorgement which might be ordered upon a finding of liability must be limited by both the text of Section 1964(a) itself and the holding in *United States v. Carson,* 52 F.3d 1173 (2d Cir.1995), interpreting that section.

To justify the $280 billion disgorgement award it seeks, the Government has developed an economic model approximating the ill-gotten gains of Defendants. *See* United States' Proposed Concl. Law, § IV.A.3. The model purports to calculate all of Defendants' proceeds from cigarettes smoked between 1971 and 2000 by persons who have been included within the Government-defined "youth addicted population." See Motion, at 3 (terms in quotes are defined within the Government's economic model). Defendants claim that the Government's economic model fails to distinguish between ill-gotten gains, which can be disgorged under Section 1964(a), and legally-gotten gains, which cannot. In addition, Defendants argue that the Government's economic model must be rejected because it does not limit disgorgement to those ill-gotten gains that "are being used to fund or promote the illegal conduct, or constitute capital available for that purpose," a standard that Defendants argue is required by Section 1964(a). Motion, at 21–22 (citing *Carson,* 52 F.3d at 1182). The Government responds that its economic model need only reasonably approximate the ill-gotten gains of Defendants. Finally, the Government argues that the *Carson* limitation on disgorgement on which Defendants rely should be rejected because it is overly-restrictive and contrary to the text and purposes of RICO.

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law."

---

42 U.S.C. § 2651, *et seq.*) and Count Two (pursuant to the Medicare Secondary Payer provisions of the Social Security Act, 42 U.S.C. §§ 1395y(b)(2)(B)(ii) & (iii)). *See United States v. Philip Morris,* 116 F.Supp.2d 131 (D.D.C.2000).

4. As a result of corrections made to the Youth Addicted Population and the resulting proceeds' calculation, the amount of disgorgement sought by the Government is $280 billion, rather than $289 billion initially identified in the United States' Preliminary Proposed Conclusions of Law. *See* Govt's Opp'n., at 1.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. *See Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C.Cir.1989).

Additionally, "if the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its significance, summary judgment is improper." *Greenberg v. FDA*, 803 F.2d 1213, 1216 (D.C.Cir. 1986). At the summary judgment stage, "the court is not to make credibility determinations or weigh the evidence." *Dunaway v. Int'l Bhd. of Teamsters*, 310 F.3d 758, 761 (D.C.Cir.2002).

**B. Any Order of Disgorgement Must Rest upon a Showing of a Reasonable Likelihood of Future RICO Violations**

■ Both the plain language of Section 1964(a) as well as the very nature of equitable remedies permitted under it require a showing of a reasonable likelihood of future RICO violations before a court may

order any equitable remedy, including disgorgement.[5]

The text of Section 1964(a) explicitly limits the Court's jurisdiction to remedies that "prevent and restrain" future RICO violations.[6] Moreover, the three examples of permissible remedies set forth in Section 1964(a)—divestiture, restrictions on future activities, and dissolution/reorganization—are all forward looking and focus on the goal of preventing future RICO violations. *See Richard v. Hoechst Celanese Chem. Group, Inc.*, 355 F.3d 345, 354 (5th Cir.2003). Accordingly, the plain language of Section 1964(a) requires a showing of a reasonable likelihood of future RICO violations before a court may order disgorgement. *See Carson*, 52 F.3d at 1182. ("the jurisdictional powers of 1964(a) serve the goal of foreclosing future violations and do not afford broader redress"); *United States v. Sasso*, 215 F.3d 283, 290–91 (2d Cir.2000) (awarding relief pursuant to Section 1964(a) turns on "whether the disgorgements [sic] ordered here are designed to prevent and restrain *future* conduct rather than to punish *past* conduct") (emphasis in original); *Richard*, 355 F.3d at 354 (equitable remedies under Section 1964(a) "are available only to prevent ongoing and future conduct").

---

5. Moreover, it is well-established that the nature, seriousness, and extent of past violations may well lead to an inference of reasonable likelihood of future violations. "The likelihood of future wrongful acts is frequently established by inferences drawn from past conduct." *United States v. Local 30, United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n*, 871 F.2d 401, 409 (3d Cir.1989). *See also SEC v. Bilzerian*, 29 F.3d 689, 695 (D.C.Cir.1994); *SEC v. Gruenberg*, 989 F.2d 977, 978 (8th Cir.1993); *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1228–29 (D.C.Cir.1989).

6. Section 1964(a) states in full:

The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons. 18 U.S.C. § 1964(a).

In addition, the very nature of the equitable remedies permitted under Section 1964(a) requires a showing of reasonable likelihood of future RICO violations. *See Carson*, 52 F.3d at 1181–82; *United States v. Cappetto*, 502 F.2d 1351, 1358 (7th Cir. 1974) ("Pursuant to Section 1964 ... whether equitable relief is appropriate depends, as it does in other cases in equity, on whether a preponderance of the evidence shows a likelihood that the defendants will commit wrongful acts in the future.") (interpreting equitable remedies under the provision which would later become Section 1964(a)); *Local 30*, 871 F.2d at 408 (same).

Accordingly, the Court concludes that the plain language of Section 1964(a), particularly the "prevent and restrain" provision, and the very nature of those equitable remedies permitted under it, require a showing of a reasonable likelihood of future RICO violations prior to entering any order of injunctive relief or disgorgement in this action.

## C. The Extremely Restrictive Limitation *Carson* Has Engrafted onto Section 1964(a) Must Be Rejected

■ The scope of disgorgement permitted under Section 1964(a) is a matter of first impression in this Circuit. The only other circuits to have considered this question are the Second and the Fifth. *See generally, Carson*, 52 F.3d 1173 and *Richard*, 355 F.3d 345. Defendants argue that the Court should follow the *Carson* standard requiring that disgorgement under Section 1964(a) be limited to those ill-gotten gains "being used to fund or promote the illegal conduct, or constitute capital available for that purpose." Motion, at 20–21. The Government argues that *Carson's* limitation on the scope of disgorgement is overly-restrictive and contrary to the text of RICO and the purposes of RICO disgorgement.[7] For the reasons set forth below, the Court declines to adopt *Carson's* limits on the scope of disgorgement.

### 1. The *Carson* holding

*Carson* involved a civil RICO action against a former union officer who had previously been convicted of embezzling union funds and taking illegal kickbacks from employers who wanted a guarantee of labor peace. The district court ordered Carson to disgorge the $16,200 in kickbacks he had received thirteen years earlier. On appeal, Carson argued, *inter alia*, that the district court had exceeded its jurisdiction when it ordered him to disgorge all his ill-gotten gains. *Carson*, 52 F.3d at 1176. The Second Circuit held, as a threshold matter, that such disgorgement is an available remedy under Section 1964(a), a holding previously endorsed by this Court as "well reasoned and persuasive." *Philip Morris*, 116 F.Supp.2d at 151.

The Second Circuit also held that disgorgement of gains which were ill-gotten long in the past would not ordinarily "pre-

7. In *Philip Morris,* 116 F.Supp.2d 131, the Court denied in part and granted in part Defendants' motion to dismiss. It also adopted *Carson's* holding that disgorgement is a permissible remedy under Section 1964(a). It did not, however, as Defendants' claim, adopt the *Carson* legal standard relating to the scope of disgorgement.

The Court's reference to the *Carson* standard was made in response to Defendants' argument in their motion to dismiss that disgorgement is *never* available in civil RICO cases. The Court noted that it was premature to speculate as to whether disgorgement would eventually be appropriate (as opposed to available) in this case. Any apparent endorsement of *Carson* as to the specific standard for the *scope* of disgorgement would have been premature as this issue had not yet been addressed by the parties or the Court.

vent and restrain" future RICO violations under Section 1964(a) unless such gains "are being used to fund or promote the illegal conduct, or constitute capital available for that purpose." *Id.* at 1182. This standard rests on the Second Circuit's interpretation of the phrase "prevent and restrain." Emphasizing that the examples of available remedies listed in the statute are "forward looking," *see* discussion *infra*, § II B, *Carson* treats the issue presented as "whether the disgorgements [sic] ordered here are designed to 'prevent and restrain' *future* conduct rather than to punish *past* conduct." *Carson*, 52 F.3d at 1182 (emphasis in original). Noting that the funds ordered disgorged had been acquired thirteen years earlier, the Second Circuit concluded that

> [c]ategorical disgorgement of all ill-gotten gains may not be justified simply on the ground that whatever hurts a civil RICO violator necessarily serves to "prevent and restrain" future RICO violations. If this were adequate justification, the phrase "prevent and restrain" would read "prevent, restrain and discourage," and would allow any remedy that inflicts pain.

*Id.*

### 2. *Carson's* limitation on the scope of disgorgement is inconsistent with the text of Section 1964(a)

The text of Section 1964(a) confers on the district court jurisdiction to "prevent and restrain" RICO violations. In *Carson*, the Second Circuit concluded that disgorgement of ill-gotten gains in Section 1964(a) RICO actions is proper only when such gains "are being used to fund or promote the illegal conduct, or constitute capital available for that purpose." *Carson*, 52 F.3d at 1182. The Second Circuit offered virtually no support for its rewriting of Section 1964(a), a rewriting which

cannot be reconciled with the text of the provision for the following three reasons.

First, the plain text of Section 1964(a) does not support *Carson's* limitation on disgorgement. In order to overcome this obstacle, *Carson* interpreted the "prevent and restrain" language to preclude disgorgement unless there is a finding that "the [ill-gotten] gains are being used to fund or promote the illegal conduct or constitute capital available for that purpose," reasoning that "to prevent and restrain" does not include "to deter" or "to discourage." *Id.* However, *Carson's* narrow interpretation of Section 1964(a) cannot be squared with Congress' intention that this provision be read broadly. *See* S.Rep. No. 91–617, at 160 (1969) (stating that RICO provides the courts with the authority to "craft equitable relief broad enough to do all that is necessary").

Moreover, the Second Circuit never explained why jurisdiction to "prevent and restrain" RICO violations fails to authorize equitable relief designed to deter defendants from committing unlawful acts in the future. Indeed, the meaning of deterrence clearly encompasses the concept of both "prevent" and "restrain." *See* BLACK'S LAW DICTIONARY (6TH ed.1991) (defining "deter" as "[t]o discourage or stop by fear; to stop or *prevent* from acting . . . .") (emphasis added); OXFORD ENGLISH DICTIONARY (2d ed.1989), at *http://dictionary.oed.com* (defining "deter" as "1. [t]o *discourage* and turn aside or *restrain* by fear; to frighten from anything; to *restrain* or keep back from acting or proceeding by any consideration of danger or trouble") (emphasis added); MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed.1997) (defining "deter" as "to turn aside, *discourage* or *prevent* from acting") (emphasis added). Although there are minor differences of nuance amongst the words "deter," "discourage," "prevent," and "restrain," it is clear that

those differences are slight, and surely not sufficient to justify the differing treatment accorded them by the Second Circuit.

Second, the Supreme Court concluded more than a half century ago that the full scope of a court's equitable jurisdiction must be recognized and applied except where "a statute in so many words, *or by a necessary and inescapable inference*, restricts the court's jurisdiction" or where there is a "clear and valid legislative command" limiting jurisdiction. *Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946) (emphasis added). *Carson's* restriction on the scope of disgorgement under Section 1964(a) cannot be reconciled with this holding. The *Carson* court refused to recognize the full scope of equitable jurisdiction under Section 1964(a) even though the statutory phrase "prevent and restrain" encompasses no "clear legislative command" to limit the scope of disgorgement to exclude deterrence. Moreover, as there is no language in the statute specifically limiting disgorgement to funds that are being used or remain available to fund future RICO violations, any inference of such a limitation is not "necessary and inescapable."

Given the remedial purpose of RICO, the limitation *Carson* imposes on the Court's equitable jurisdiction is particularly inappropriate in the case of Section 1964. *See Sedima, SPRL v. Imrex Co. Inc.*, 473 U.S. 479, 492 n. 10, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) ("if Congress' liberal-construction mandate is to be applied anywhere, it is in Section 1964, where RICO's remedial purposes are most evident") (private civil RICO case).

Third, *Carson's* interpretation of RICO's "prevent and restrain" language is inconsistent with the interpretations of numerous federal courts of similarly worded equitable relief provisions in other regulatory statutes. For example, the Securities and Exchange Act of 1934 provides, in relevant part, that whenever "any person is engaged or is about to engage in acts or practices constituting a violation [of the Securities Act]," courts have jurisdiction "to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted...." *See* 15 U.S.C. § 78u(d).[8] Although this provision, like RICO's Section 1964(a), seeks to "restrain" future violations and does not explicitly provide for disgorgement, this Circuit as well as others have held that there is jurisdiction under the Securities Act to order disgorgement of proceeds obtained from a wrongdoer's past unlawful acts. *See First City Fin. Corp.*, 890 F.2d at 1229–1231; *SEC v. Materia*, 745 F.2d 197, 200 (2d Cir.1984); *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1103–05 (2d Cir.1972).

Moreover, in interpreting the scope of the Securities Act's relief provision, no court has ruled that such disgorgement must be limited to proceeds that "are being used to fund or promote the illegal conduct, or constitute capital available for that purpose." Rather, courts have recognized that disgorgement of ill-gotten gains is essential in order to achieve the remedial purposes of the Securities Act: "to deprive a wrongdoer of his unjust enrichment and to deter others from violating

---

**8.** The Securities Act states in relevant part:
   Whenever it shall appear to the Commission that any person is engaged or is about to engage in acts or practices constituting a violation of any provision of this chapter, the rules or regulations thereunder, ... it may in its discretion bring an action in the proper district court of the United States ... to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond.
   15 U.S.C. § 78u(d).

the securities laws." *First City Fin. Corp.*, 890 F.2d at 1230.

Similarly, the Commodity Exchange Act authorizes courts "to enjoin" and issue a "restraining order" when a "person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of [the Act]." *See* 7 U.S.C. § 13a-1. Courts have held that this forward looking provision, which also does not explicitly provide for disgorgement, authorizes disgorgement of ill-gotten gains from past violations because it "may serve to deter future violations" since "[f]uture compliance may be more definitely assured if one is compelled to restore one's illegal gains." *Commodity Fut. Trad. Comm'n v. Co Petro Marketing Group, Inc.*, 680 F.2d 573, 583–84 (9th Cir.1982). Moreover, it "would frustrate the regulatory purposes of the Act to allow a violator to retain his ill-gotten gains." *Id. See Commodity Futures Trad. Comm'n v. British Amer. Commod. Opt. Corp.*, 788 F.2d 92, 94 (2d Cir.1986).

In addition, courts have consistently concluded that other forward looking remedial statutes permit broad disgorgement. *See generally, Porter*, 328 U.S. at 398, 66 S.Ct. 1086 (permitting disgorgement of profits acquired in violation of Emergency Price Control Act of 1942, *see* 50 U.S.C. § 901, although the Act does not specifically provide such a remedy); *FTC v. Gem Merchandising Corp.*, 87 F.3d 466, 468–70 (11th Cir.1996) (allowing broad disgorgement under the Federal Trade Commission Act, *see* 15 U.S.C. § 53(b), in order to effectuate the Act's deterrent purpose even though the statute does not specifically authorize disgorgement).

Accordingly, *Carson's* limitation on the scope of disgorgement allowed under Section 1964(a) finds no support in the plain language of the statute or in the interpre-tations by other federal courts of similar statutory language.

### 3. *Carson's* limitation on the scope of disgorgement is inconsistent with the purposes of RICO

The Supreme Court has recognized that one of the purposes of civil remedies under Section 1964(a) is "to divest the association of the fruits of its ill-gotten gains." *United States v. Turkette*, 452 U.S. 576, 585, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (addressing the availability of broad civil remedies under Sections 1964(a) and (c)). In reaching this conclusion, the Court did not restrict divestiture to ill-gotten gains that remain available for distribution. Moreover, our Circuit has concluded that "[d]isgorgement is . . . designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating" the law. *First City Fin. Corp.*, 890 F.2d at 1230. This is true whether or not those funds are presently being used for illegal purposes or can serve as capital to promote future illegal conduct.

In addition, in the Senate Report accompanying the RICO legislation, Congress emphasized that RICO provided the courts with authority to craft "equitable relief broad enough to do all that is necessary to free the channels of commerce from all illicit activity" and to "prohibit[ ]" persons who committed a pattern of racketeering activity "from continuing to engage in this type of activity in any capacity." *See* S.Rep. No. 91–617 at 79, 82 (1969).

Defendants argue that the purposes for disgorgement upon which the Government relies "are not derived from RICO cases but from cases decided under the *securities* laws." Defs.' Mem. in Opp'n., at 11 (emphasis in original). However, neither the Second Circuit nor Defendants offer any reason to conclude that disgorgement in RICO cases does not serve the very

same purposes (deterrence and deprivation of unjust enrichment) as it does in securities cases. This Court already has recognized that "the purpose of disgorgement is to deprive the wrongdoer of his ill-gotten gains." *United States v. Philip Morris,* 273 F.Supp.2d 3, 10 (D.D.C.2002). As explained above, because disgorgement deters violations of the law through depriving violators of ill-gotten gains, it is forward looking and serves to "prevent and restrain" future RICO violations consistent with the jurisdiction granted in Section 1964(a).

Indeed, under the *Carson* standard, even if the Court finds a reasonable likelihood of future RICO violations, it could not order the disgorgement of illegally-acquired funds if those funds have already been spent and are therefore unavailable "to fund or promote the illegal conduct." However, our Court of Appeals has held that a rule that would limit disgorgement to only those "actual assets unjustly received," as *Carson* would require, "would lead to absurd results." *SEC v. Banner Fund Int'l,* 211 F.3d 602, 617 (D.C.Cir. 2000). In *Banner Fund Int'l,* the defendant argued that he could not comply with the disgorgement order because he did not have access to the assets that were at issue. The Court of Appeals upheld the disgorgement order, noting that district courts are not limited to "the actual property obtained by means of [the] wrongful act" because what mattered was the "amount by which the defendant was unjustly enriched." *Id.* at 617. Our Court of Appeals reasoned that under the defendant's approach

> a defendant who was careful to spend all the proceeds of his fraudulent scheme, while husbanding his other assets, would be immune from an order of disgorgement. [That] would be a monstrous doc-

trine for it would perpetuate rather than correct an inequity.

*Id.*

The Circuit's strong language is directly applicable to the issue presently before this Court. Here, under the reasoning in *Carson,* so long as a defendant had disposed of all illegally-acquired gains (whether through payment of dividends or capital distributions to shareholders or investment in new manufacturing facilities), such gains would be unavailable to fund present or future illegal conduct and therefore could escape disgorgement. Neither *Carson,* nor the Defendants, explain why this result is not just as "absurd" in a civil RICO case as our Circuit found it to be in a securities case or why it would not "perpetuate rather than correct an inequity."

*Carson* seems to assume that disgorgement which is not limited to gains which "are being used to fund or promote the illegal conduct, or constitute capital available for that purpose" would be inherently punitive, in violation of Section 1964(a). However, because disgorgement of ill-gotten gains serves a deterrent purpose, it can "prevent and restrain" future RICO violations without being designed to punish. In fact, by limiting the district court's ability to deter violations through disgorgement, *Carson's* restriction would weaken the court's ability to "prevent and restrain" future violations as provided in Section 1964(a). *See Richard,* 355 F.3d at 356 (Wiener, J, dissenting) ("It has to be self-evident to courts and litigants alike that a prayer for disgorgement of profits ... is intended to prevent and restrain similar future conduct.... By its very nature, disgorgement is designed to prevent manufacturers of similar products from engaging in such conduct in the future.") (internal citation omitted).[9]

---

**9.** In *Richard,* the Fifth Circuit relied on *Car-*      son and rejected a claim for disgorgement

In short, the Court does not find persuasive *Carson's* rationale for limiting disgorgement under Section 1964(a) to funds that "are being used to fund or promote the illegal conduct, or constitute capital available for that purpose," *Carson,* 52 F.3d at 1182, and will not engraft onto a broad remedial statute such as RICO that narrow limitation.

### D. Whether the Government's Economic Model Is Accurate, Adequate, or Appropriate Is a Fact–Intensive Inquiry to Be Decided at Trial

Defendants seek partial summary judgment dismissing the Government's disgorgement claim on the ground that its economic model fails to meet the standards for disgorgement under Section 1964(a). The Government's model calculates "proceeds" on cigarettes smoked by the "youth-addicted population." *See* Motion, at 3. Defendants argue that such a calculation does not estimate the effect of their alleged RICO violations on past cigarette sales. *Id.* at 9. Specifically, Defendants assert that the Government's attempt to recapture all the "proceeds" from Defendants' sales to the "youth-addicted population" from 1971 to 2000 includes both gains from alleged RICO violations and gains from legitimate sales during this period. *Id.* at 4–5. Thus, Defendants argue, the Government has failed to meet its burden of identifying which proceeds are ill-gotten and therefore subject to disgorgement. *Id.* at 8.

In addition, Defendants contend that the Government improperly made an "additional gains" adjustment to its calculation of the economic model, which resulted in pre-judgment interest of $204 billion, or 73 percent of the $280 billion sought. *Id.* at 14–15. Defendants also maintain that the Government failed to tailor its disgorgement request to amounts necessary to "prevent and restrain" future RICO violations, as Section 1964(a) requires. *Id.* at 18. In light of these and other alleged flaws in the Government's model, Defendants claim that the Government cannot satisfy the legal standards for obtaining disgorgement.

In response, the Government argues that its economic model need only be a reasonable approximation of ill-gotten gains. *See* Govt's Opp'n., at 5. The Government asserts that, in light of Defendants' massive and pervasive scheme to defraud, the law does not require a precise calculation of ill-gotten gains because "separating legal from illegal profits exactly may at times be a near-impossible task." *Id.* In addition, the Government claims that the "additional gains" adjustment to its economic model is well established and appropriate. *Id.* at 6.

The foregoing recitation of the parties' positions makes it eminently clear that there are genuine disputes over material facts which must be considered in the calculation of any disgorgement that may be ordered by this Court upon a finding of liability. In order to make any judgment about the proper calculation of disgorgement amounts, the Court must hear the

---

under Section 1964(a). However, *Richard* is distinguishable from the instant case on its facts. In *Richard,* the parties from whom disgorgement was sought were no longer operating the business in which they had committed the racketeering acts. Moreover, unlike the Government in this case, the party seeking disgorgement in *Richard* failed to ar-

gue that disgorgement would prevent and restrain future violations. The Fifth Circuit concluded that "[a]bsent this argument, [plaintiff's] disgorgement claim seems to do little more than compensate for the alleged loss." *Richard,* 355 F.3d at 355. Accordingly, the analysis in *Richard* is not applicable to the instant case.

full explanations from the parties' experts about the economic models used. In short, a determination of whether the Government's economic model is accurate, adequate, or appropriate under Section 1964(a) is a fact-intensive inquiry that can only be resolved at trial. Summary judgment is, therefore, inappropriate.

## III. CONCLUSION

For all the foregoing reasons, Defendants are not entitled to partial summary judgment dismissing the Government's disgorgement claim, and their Motion is **denied.**